CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

SEP 27 2007

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| CALVIN PERRY, | ) | |
|     Plaintiff, | ) | Civil Action No. 7:07-cv-00445 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| DUNCAN MILLS, et al., | ) | By: Hon. James C. Turk |
|     Defendants. | ) | Senior United States District Judge |

Plaintiff Calvin Perry ("Perry"), a Virginia inmate proceeding pro se, brings this action under the Civil Rights Act, 42 U.S.C. §1983, with jurisdiction vested under 28 U.S.C. §1343.[1] In his complaint, Perry alleges that he was transferred to Wallens Ridge State Prison ("WRSP") without due process and that he faces imminent danger of serious physical harm because he has been denied the name-brand medication previously prescribed to him and because the ventilation system blows particles into his cell. He seeks monetary damages as well as injunctive relief. Perry has also applied to proceed in forma pauperis, based on his allegations that he is in imminent danger of serious physical harm. 28 U.S.C. §1915(g). Upon review of court records, the court finds that Perry's request to proceed in forma pauperis must be denied, pursuant to 28 U.S.C. §1915(g), and his complaint must be dismissed without prejudice.

I.

The in forma pauperis statute, 28 U.S.C. §1915, was substantially amended by the Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, §§ 801-10, 110 Stat. 1321 (1996), ("PLRA").

---

[1] Perry attempts to cast his complaint as a class action on behalf of similarly situated inmates at Wallens Ridge State Prison. However, the court cannot certify a class in an action where a pro se litigant seeks to represent the interests of the class. See Oxendine v. Williams, 509 F.2d 1405 (4th Cir. 1975). Accordingly, Perry's motion for certification of a class will be denied. Nonetheless, the court will consider Perry's complaint as an individual suit brought pursuant to 42 U.S.C. § 1983.

1

The purpose of the PLRA was to require all prisoner litigants suing government entities or officials to pay filing fees in full, either through prepayment or through installments withheld from the litigant's inmate trust account. §1915(b). Section 1915(g) denies the installment payment method to those prisoners who have "three strikes"--- those prisoners who have had three previous cases or appeals dismissed as frivolous, malicious, or for failure to state a claim.

However, a prisoner litigant with three strikes may qualify to proceed under the installment payment plan if he "is in imminent danger of serious physical injury." §1915(g). A prisoner may invoke the imminent danger exception to the §1915(g) "three strikes" provision only to seek relief from a danger which is imminent at the time the complaint is filed. Abdul-Akbar v. McKelvie, 239 F.3d 307, 314 (3d Cir. 2001); Banos v. O'Guin, 144 F.3d 883, 884 (5th Cir. 1998). In order to qualify for the imminent danger exception, the prisoner must at least raise a credible allegation that he is in imminent danger of serious physical harm. White v. State of Colorado, 157 F.3d 1232 (10th Cir. 1998) (citing Gibbs v. Roman, 116 F.3d 83 (3d Cir. 1997), overruled on other grounds).

Allegations that the inmate has faced imminent danger in the past are insufficient to trigger the §1915(g) exception. See Abdul-Akbar, 239 F.3d 307 (being sprayed once with pepper spray not imminent danger); Abdul-Wadood v. Nathan, 91 F.3d 1023 (7th Cir. 1996) (being given Ibuprofen instead of something stronger for injury, now healed, is not imminent danger). Conclusory or ridiculous allegations of imminent danger are also insufficient to invoke the §1915(g) exception. Martin v. Shelton, 319 F.3d 1048, 1050 (8th Cir. 2003) (working in inclement weather twice is not imminent danger); White, 157 F.3d at 1231 (vague and conclusory assertions of withheld medical treatment when inmate was seen by physician over 100 times is not imminent danger).

Perry has not prepaid the $350.00 filing fee required in civil actions and, instead, seeks to

proceed in forma pauperis. Court records indicate that Perry has filed at least three prior civil actions, in forma pauperis, that were dismissed as malicious, frivolous, or for failure to state a claim: See Perry v. Basett, Civil Action No. 7:05-cv-00519 (W.D. Va. Sept. 13, 2005) (dismissed under §1915A); Perry v. Basett, Civil Action No. 7:04-cv-00241 (W.D. Va. May 13, 2004) (dismissed under §1915A); Perry v. Keefe Commissary Network Sales, Civil Action No. 7:00-cv-00890 (W.D. Va. March 1, 2001) (dismissed under §1915A); Perry v. Long, Civil Action 7:92-cv-00307 (W.D. Va. Feb. 18, 1993) (court granted defendants' motion to dismiss, pursuant to Rule 12(b)(6), upon finding that plaintiff failed to allege facts stating any §1983 claims). Because Perry has three "strikes" within the meaning of §1915(g), he cannot proceed with this civil action or any other civil action in this court without prepayment of the $350.00 fee required for filing civil actions[2] unless he demonstrates that he is "under imminent danger of serious physical injury." §1915(g).

## II.

Perry alleges the following facts in support of his assertion that he is in imminent danger of serious physical harm so as to qualify for the exception under §1915(g). Perry first alleges that he was denied due process when he was transferred from a medium security institution to WRSP on February 8, 2006, because he was not afforded any type of notice or hearing. He claims that he is subject to "imminent and irreparable harm from racist security guards that are known to assault, shoot, lie, beat, and mistreat" WRSP inmates, and prison gangs. (Compl. at 5.) Perry further claims that he must endure "extreme isolation, limited out door exercises" and that he is deprived of "almost any environmental or sensory stimuli" or "human contact." (Compl. at 8.)

Perry alleges in his second claim that he suffers from hypertension and that the WRSP

---

[2] This fee is set by statute. See 28 U.S.C. § 1914(a).

3

medical staff recently substituted Perry's Norvasc (amlodipine besylate) medication with Amlodipine, a generic brand.[3] Perry alleges that the first time he consumed an Amlodipine pill, he "became very ill" with "chest pains . . . dizzy spells, dry mouth" and a "feeling of intoxication." (Compl. at 11.) Perry claims that Amlodipine fails to control his high blood pressure and causes "extreme and chronic headaches, los[s] of sensation in [his] left arm and hard, dimness of vision, and numbness of face." (Compl. at 12.) Perry alleges that he is subject to "imminent and irreparable serious harm, including, but not limited to, blindness, nerve damage which causes numbness, chronic migraines, heart attacks, hemorrhagic strokes, ischemic strokes, and sudden death." (Compl. at 10.)

Finally, Perry claims that lint and dust particles are entering his cell through the ventilation system. He claims to suffer from nosebleeds and chronic migraines due to these particles. Perry claims that the failure to remedy the inadequate ventilation system constitutes a deliberate indifference to Perry's "basic human needs." (Compl. at 15.) Perry alleges that he is subject to "imminent and irreparable harm, including, but not limited to, respiratory infection, lung cancer, . . . mucus full of lint and dust, and . . . death." (Compl. at 14.)

### III.

The court cannot find that Perry's allegations in his claims satisfy the imminent danger exception under §1915(g). Perry's complaints about a transfer without due process do not involve any past, present, or future serious physical injury. His speculative allegation that WRSP guards are "known to" harm inmates is insufficient to support a claim of imminent harm. See Martin v.

---

[3] The court takes judicial notice of the fact that Norvasc is a prescription medication, manufactured and sold by Pfizer, used to treat high blood pressure (hypertension), angina (chest pain), and other cardiovascular conditions. See http://www.norvasc.com/high-blood-pressure-medicine/norvasc-safety.asp. Generic versions of the drug are currently available.

4

Sheldon, 319 F.3d 1048, 1050 (8th Cir. 2003) (finding that vague, speculative, or conclusory allegations are insufficient to invoke the exception of § 1915(g); rather, the inmate must make "specific fact allegations of ongoing serious physical injury, or of a pattern of misconduct evidencing the likelihood of imminent serious physical injury"); White, 157 F.3d at 1231. Accordingly, this claim must be dismissed.

Perry also fails to adequately demonstrate that replacing his brand-name hypertension medication with the generic brand places him in imminent danger of serious physical harm or that the medication has caused him to suffer any significant injury.[4] Perry's submissions indicate that he has been examined and treated by the WRSP medical department for his hypertension. While Perry alleges that the prescribed medication has not completely alleviated his hypertension, the court is unable to conclude that Perry is in imminent danger of irreparable harm merely because WRSP is providing him with a generic drug brand and he is suffering a few, admittedly uncomfortable, but

---

[4] The court notes that the United States Food and Drug Administration ("FDA") must approve any new drug before it can be marketed or sold in the United States.

> Previously, applications for FDA approval proceeded under a new drug application ("NDA"). 21 U.S.C. § 355(b). This cumbersome and involved process required each applicant to submit safety and efficacy studies, even if it duplicated previous studies done on identical drugs with the same ingredients. In 1984, Congress passed Drug Price Competition and Patent Term Restoration Act (the "Hatch-Waxman Act"), Pub. L. No. 98-417, 98 Stat. 1585 (1984). The purpose of the Hatch-Waxman Act was threefold: (1) to reduce the average price paid by consumers; (2) preserve the technologies pioneered by the brand-name pharmaceutical companies; and (3) create an abbreviated new drug application ("ANDA") to bring generic drugs to the market. The ANDA process allows the manufacturers of generic drugs to gain early entry into the market. Hatch-Waxman's truncated procedure avoids the duplication of expensive safety and efficacy studies, so long as the generic manufacturer proves that its drug is bio-equivalent to the already-approved brand-name/pioneer drug.

Schering-Plough Corp. v. F.T.C., 402 F.3d 1056, 1059 (11th Cir. 2005). As the manufacturers of Amlodipine necessarily had to prove bio-equivalency to obtain FDA approval through the ANDA process, Perry's unsupported claim that Amlodipine is "experimental" and not "bio-equivalent" fails. (Compl. at 12-13.)

5

nonetheless non-life-threatening symptoms.[5] Furthermore, the symptoms that Perry experienced the first time he ingested Amlodipine qualify as past events and are, therefore, insufficient to trigger the §1915(g) exception. Accordingly, Perry's second claim must also be dismissed.[6]

Perry's third claim, that lint and dust particles are entering his cell through the ventilation system and causing him injury, is also insufficient to satisfy the "imminent danger" requirement under 28 U.S.C. § 1915(g). Perry does not offer any support for his allegation that his symptoms are caused by the lint and dust. Nor does he allege that he ever sought or needed medical treatment for his nosebleeds or migraine headaches. Furthermore, an unspecified number of migraines and nosebleeds are insufficient to demonstrate the existence of imminent danger of serious physical harm. See Fuller v. Johnson County Bd. of County Comm'rs, No. 07-3001-SAC, slip op. at *1 (D. Kan. Aug. 08, 2007) (finding no imminent harm where inmate alleged that the emission of dust, lint, shower odor, and dead human skin caused him to suffer headaches, watery eyes, a change in voice, and increased mucus, but did not complain of breathing difficulties); cf. Fuller v. Myers, 123 Fed. Appx. 365, 366-67 (10th Cir. 2005) (applying exception where prisoner suffered from breathing difficulties and other respiratory problems and had been under treatment of physician for this

---

[5] Moreover, the court takes judicial notice of the fact that many of the symptoms that Perry complains of are also side effects of Norvasc. The official Norvasc website indicates that the most common side effects are headache, feet or ankle swelling, tiredness, and dizziness. See http://www.norvasc.com/high-blood-pressure-medicine/norvasc-safety.asp.

[6] In any event, Perry fails to demonstrate that anyone has acted with deliberate indifference to his serious medical needs. Estelle v. Gamble, 429 U.S. 97 (1976). Perry does not allege that his hypertension is not being treated by the WRSP medical department but merely disagrees with the medication substitution. Questions of medical judgment are not subject to judicial review. Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975). Claims regarding a disagreement between an inmate and medical personnel over diagnosis or course of treatment and allegations of malpractice or negligence in treatment do not state cognizable constitutional claims under the Eighth Amendment. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985); Estelle, 429 U.S. at 105-06. Perry's claim states, at most, a claim of alleged medical negligence, a state law claim which is not actionable under § 1983. Sosebee v. Murphy, 797 F.2d 179, 181 (4th Cir. 1986).

problem for more than twenty years, including the use of prescribed inhaler when ventilation system exacerbated his breathing difficulties and caused severe headaches and nose bleeds). Finally, Perry's speculative allegations concerning the possibility of respiratory infection, lung cancer, and death are insufficient to invoke the §1915(g) exception. Therefore, Perry's final claim must also be dismissed.

## IV.

Accordingly, as Perry fails to allege imminent danger related to these claims, he cannot qualify to proceed with this portion of his lawsuit absent full payment of the fee. As Perry thus does not qualify for the §1915(g) exception and has not prepaid the filing fee for this action, the court will deny his application to proceed in forma pauperis and will dismiss the complaint without prejudice. An appropriate Order shall be issued this day.[7]

The Clerk is directed to send copies of this Memorandum Opinion and accompanying Order to Plaintiff and to counsel of record for the Defendants, if known.

ENTER: This 27th day of September, 2007.

/s/ James C. Turk
Senior United States District Judge

---

[7] The court has previously notified Perry that he may not file civil actions in this court unless he either prepays the filing fee or demonstrates that he is under imminent danger of serious physical injury. Therefore, the court will not give Perry additional time to pay the filing fee or amend his complaint.

7